UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED REAPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 21-cv-05876-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Pending before the Court is Defendant ACE American Insurance Company's motion to dismiss. Dkt. No. 11. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

**I.  BACKGROUND**

Plaintiff Red Reaper made a voluntary bone marrow donation to the National Marrow Donor Program ("NMDP") on March 15, 2012. *See* Dkt. No. 1 ("Compl.") at ¶ 1. Defendant issued an insurance policy to NMDP (the "Policy"), which provides for both temporary and permanent disability benefits to eligible donors. *See id.* at ¶¶ 1, 10–15; *see also* Dkt. No. 11-3 ("ACE Policy").[1]  Such eligible persons include "[a]ll bone marrow donors registered with and participating in [NMDP's] National Marrow Donor Program and whose names are on file with the Policyholder." *See* ACE Policy at 7.[2]  The parties do not appear to dispute that Plaintiff meets this

---

[1] The Court **GRANTS** the unopposed request for judicial notice of the Policy and Defendant's February 2021 denial letter, which are incorporated by reference in the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1000, 1002–03 (9th Cir. 2018) (discussing judicial notice and incorporation-by-reference doctrine). The Court otherwise **DENIES** the requests for judicial notice as **MOOT**.

[2] For ease of reference, the Court refers to the PDF page numbers unless otherwise specified.

1   definition. *See generally* Dkt. No. 11.  Plaintiff alleges that since the bone marrow donation he

2   has experienced pain and weakness in his hips, back, and legs, and is permanently disabled as a

3   result of the procedure.  *See* Compl. at ¶¶ 2, 16, 18, 23–28, 33–35.

4         Plaintiff alleges that in June 2012, he inquired with NMDP about submitting a disability

5   claim under the Policy.  *See id.* at ¶ 19.  He states that he submitted the required forms to NMDP.

6   *Id.*  However, Plaintiff asserts that NMDP dissuaded him from filing a claim with Defendant.  *See*

7   *id.* at ¶¶ 19–20.  Plaintiff alleges that he described his intermittent work history since the bone

8   marrow donation, and NMDP provided him with an "incorrect and bad faith interpretation of his

9   coverage" under the Policy.  *Id.* at ¶ 19.  NMDP explained by email:

> If you are able to work in any capacity, even if it is not in the capacity you did before, you would not be eligible for temporary total disability through this policy.  Since you've indicated that you are able to work around or through your pain, chances are a physician will not consider you totally disabled.  Without a physician statement, our insurance provider will not accept the claim.

15   *Id.* (emphasis omitted).  The email further stated that:

> NMDP will continue to cover pre-authorized medical evaluations and interventions as they relate to your complications from donation, ***even though our disability insurance would not apply to your situation.***

19   *Id.* (emphasis in original).  Believing that he could not receive disability benefits under the Policy,

20   Plaintiff continued to work over the next few years.  *See id.* at ¶¶ 21, 31.

21         Over eight years after the initial bone marrow procedure and his correspondence with

22   NMDP, Plaintiff's counsel submitted a claim for Plaintiff's continued disability under the Policy

23   on September 24, 2020.  *See id.* at ¶ 36.  On February 11, 2021, Defendant denied Plaintiff's

24   claim.  *See id.* at ¶ 37.  Plaintiff alleges that he is entitled to both temporary and permanent

25   disability benefits under the Policy, and brings causes of action against Defendant for (1) breach of

26   contract; and (2) breach of the covenant of good faith and fair dealing.  *See id.* at ¶¶ 38–58.

27   Defendant moves to dismiss both causes of action as untimely.  Dkt. No. 11.

28   //

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

A statute of limitations defense may be raised by a motion to dismiss "[if] the running of the statute is apparent on the face of the complaint." *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, a complaint may not be dismissed unless it appears "beyond doubt" that plaintiffs can prove no set of facts that would establish the timeliness of the claim. *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998).

//

**III.    DISCUSSION**

Defendant contends that Plaintiff's claim—submitted over eight years after the bone marrow donation—is untimely and barred by the plain language of the Policy. *See* Dkt. No. 11.

As relevant to this motion, the Policy requires that persons seeking benefits provide written proof of loss within 90 days after the loss:

> Written (or authorized electronic or telephonic) proof of loss must be sent to the agent authorized to receive it. Written (or authorized electronic or telephonic) proof must be given within 90 days after the date of loss. If it cannot be provided within that time, it should be sent as soon as reasonably possible. In no event, except in the absence of legal capacity, should proof of loss be sent later than one year from the time proof is otherwise required.

ACE Policy at 17. Additionally, under the Policy:

> No lawsuit or action in equity can be brought to recover on this Policy: (1) before 60 days following the date proof of loss was given to [Defendant]; or (2) after 3 years following the date proof of loss is required.

*See id.* at 18.

Defendant argues that because the bone marrow procedure occurred in March 2012, and at that time Plaintiff experienced "severe back and hip pain," the proof of loss was due within 90 days of the procedure, or by June 2012. *See* Dkt. No. 11-1 at 5–8; *see also* Compl. at ¶¶ 2, 17–18. Plaintiff did not submit a proof of loss, however, until September 2020. *See* Compl. at ¶ 36. Defendant further argues that Plaintiff's lawsuit is untimely because he did not file it within three years from the date the proof of loss was due, or by June 2015. *See* Dkt. No. 11-1 at 7–9. Plaintiff did not file this action until July 2021. *See generally* Compl.

Plaintiff offers three arguments in response. *First*, Plaintiff contends that his claim is timely under California Insurance Code § 10350.7 as a continuing injury. *See* Dkt. No. 20 at 7–12. *Second*, Plaintiff contends that Defendant failed to provide proper notice of the applicable limitations period under the Policy, and the limitations period should be tolled. *Third*, Plaintiff contends that Defendant should be equitably estopped from relying on any contractual limitations period. *See id.* at 12–15. The Court is not persuaded.

4

### A. California Insurance Code § 10350.7

As the Supreme Court has recognized, courts generally must give effect to a plan's contractual limitations period unless that period is either unreasonably short or conflicts with a controlling statutory limitations period. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 107–08 (2013). But Plaintiff contends that California Insurance Code § 10350.7 overrides the Policy's deadline for sending written proof of loss, and therefore expands the deadline to file a lawsuit to recover under the Policy. *See* Dkt. No. 20 at 7–12. As noted above, the Policy states that written proof of loss "must be given within 90 days after the date of loss." ACE Policy at 17. Under California Insurance Code § 10350.7, however, the deadline to deliver written proof of loss under a disability policy is not tied to the date of the loss itself. Rather, § 10350.7 specifies:

> Proofs of Loss: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within 90 days after the termination of the period for which the insurer is liable* and in case of claim for any other loss within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

Cal. Ins. Code § 10350.7 (emphasis added). Plaintiff suggests that "the period for which the insurer is liable" should be interpreted to refer to the entire period of disability. *See* Dkt. No. 20 at 9–12. Because Plaintiff's disability is ongoing, Plaintiff concludes that he is not required to submit proof of loss yet. *See id.*

As an initial matter, Defendant responds that § 10350.7 does not apply to the Policy. *See* Dkt. No. 21 at 6–7. Defendant points out that California Insurance Code § 10350 provides, in relevant part, that "each disability policy *delivered or issued for delivery to any person in this State* shall contain the provisions specified in §§ 10350.1 to 10350.12, inclusive, in the words in which the same appear in such sections . . ." Cal. Ins. Code § 10350 (emphasis added). Defendant thus urges that disability policies issued and delivered to persons outside California are not bound

5

by these provisions, including § 10350.7.  Defendant states that the Policy was executed in Pennsylvania.  *See* Dkt. No. 21 at 6–7; *see also* ACE Policy at 3 ("Signed for ACE American Insurance Company in Philadelphia, Pennsylvania.").  Defendant also states—and Plaintiff acknowledges—that NMDP is headquartered in Minnesota.  *See* Dkt. No. 20 at 1, n.1.  Defendant also notes that attached to the Policy is a "Notice Concerning Policyholder Rights in an Insolvency Under the Minnesota Life and Health Insurance Guaranty Association Law."  *See* ACE Policy at 4–5.  Defendant argues that this notice further "demonstrates an intent by [Defendant] to deliver the policy in Minnesota."  *See* Dkt. No. 21 at 6.

Because Defendant only raised this argument in reply, Plaintiff did not have an opportunity to respond to it.  And the Court does not credit arguments raised for the first time in reply.  The Court also has concerns about the apparent gamesmanship in Defendant's new argument that § 10350.7 does not apply to the Policy.  In its opening brief, Defendant relied on California law throughout the motion, and specifically cited § 10350.7.  *See, e.g.*, Dkt. No. 11-1 at 5–10.  Far from arguing that California insurance law does not apply to the Policy, Defendant pointed out that "the Policy at issue here contains a clause identical to this statutory requirement [§ 10350.7]."  *See* Dkt. No. 11-1 at 5.  Defendant may not selectively rely on California law only when it finds it expedient to do so.  In any event, § 10350.7 is based on a model law, and nearly identical provisions exist under Minnesota and Pennsylvania law.  *See, e.g., Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 370 (3d Cir. 1996) (interpreting 40 Pa. Stat. § 753(A)(7)); *Laidlaw v. Com. Ins. Co. of Newark*, 255 N.W.2d 807, 811 (Minn. 1977) (interpreting Minn. Stat. § 62A.04, subd. 2(7)).

Nevertheless, the Court finds that Plaintiff overreads the scope of § 10350.7 and its application to this case.  Under the statute, proof of loss is due "within 90 days after the termination of *the period for which the insurer is liable*."  *See* Cal. Ins. Code § 10350.7 (emphasis added).  The California Supreme Court has not yet interpreted this language.  And as the parties recognize, there is a split of authority among courts that have interpreted § 10350.7 and similar states' statutes.  Under the majority view, "the period for which the insurer is liable" means the entire "period for which the employer owes benefits."  *See, e.g., Gray v. United of Omaha Life Ins.*

6

*Co.*, 251 F. Supp. 3d 1317, 1324 (C.D. Cal. 2017). Therefore, under this interpretation, "section 10350.7 would permit a claimant to submit proof of loss at any time until the claimant is either (a) no longer disabled or (b) no longer eligible for long term disability insurance under the relevant plan." *Id.*

Under the minority view, the phrase "the period for which the insurer is liable" refers to each individual period in which the insurer must pay benefits under the plan. *See, e.g.*, *Gray*, 251 F. Supp. 3d at 1325. Where, as here, benefits are paid out monthly, the phrase "'refers to each month of disability.'" *See id.* (quoting *Nikaido v. Centennial Life Ins. Co.*, 42 F.3d 557, 560 (9th Cir. 1994), *overruled by Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643 (9th Cir. 2000) (en banc)).[3] Proof of loss is therefore "due after each month of continuing disability, and 'a new cause of action with a new three-year statute of limitations period also began each month.'" *Id.* (quoting *Nikaido*, 42 F.3d at 560). The Court need not decide which interpretation should prevail, however, because the Court finds that Plaintiff's lawsuit is untimely even under the majority view that Plaintiff asks the Court to adopt. *See* Dkt. No. 20 at 9–11.

Plaintiff selectively reads the case law to mean that proof of loss is only due after the claimant is no longer disabled. Because Plaintiff alleges permanent total disability, he argues that proof of loss was never due. *See* Dkt. No. 20 at 7–12. In doing so, Plaintiff conflates the time period of disability with the time period of liability. To determine the period for which Defendant is *liable*, the Court must consider the language of the Policy. Under the majority view, "a claim for disability benefits accrues at the termination of a period of *covered disability*." *See Gray*, 215 F. supp. 3d at 1318 (emphasis added). Certainly some insurance policies may offer lifetime benefits for permanent total disability. *See, e.g.*, *Laidlaw*, 255 N.W.2d at 809, 812 (analyzing a policy in which payments "were to continue indefinitely for any general disability which prevented plaintiff from engaging in any gainful employment for which he was suited") ("We recognize that under our interpretation the statute of limitations does not begin to run until 90 days

---

[3] The Ninth Circuit previously had adopted the minority view, but in *Wetzel*, the en banc Court held that "*Nikaido* is overruled in its entirety, and its 'rolling' accrual rule is no longer the law of this circuit." *Wetzel*, 222 F.3d at 649. The Ninth Circuit in *Wetzel* did not, however, decide which approach should replace it.

after the death of the insured in the case of permanent disability for which the policy provides lifetime benefits.").

But under the Policy here, benefits for permanent total disability are not paid indefinitely. Rather, they are capped at $250,000 total, paid out at $5,000 per month. *See* ACE Policy at 8. Therefore, Defendant is only obligated to pay permanent total disability benefits under the Policy for a maximum of 4.167 years.[4] Under the Policy, the permanent total disability must also begin within 365 days from the date of the Covered Accident. *See id.* Defendant is therefore only liable for up to 5.167 years from the date of the accident that led to Plaintiff's injury. *See id.* at 8–9. *Accord Entz v. Standard Ins. Co.*, No. EDCV19402JGBSHKX, 2020 WL 5496072, at *8 (C.D. Cal. Sept. 11, 2020) (interpreting § 10350.7 as allowing written proof of loss up to 90 days after "the maximum period of liability for disability benefits under the Plan").

Here, Plaintiff alleges that "[s]ince March 15, 2012, Mr. Reaper has suffered from pain and weakness in his hips, back and legs," and "he is permanently disabled because of the donation . . . ." *See* Compl. at ¶¶ 2, 18, 33–35. He alleges that "the last date on which he was able to work at his security position was April 3, 2012 . . . ." *Id.* at ¶¶ 19, 29. And he further alleges that he inquired with NMDP to submit a disability claim in June 2012. *See id.* at ¶¶ 19, 26. The alleged Covered Accident and the onset of disability appear to be the same—March 15, 2012, the date of the procedure. Calculating from the alleged onset of disability date of March 15, 2012, the applicable proof of loss deadline for permanent total disability is 5.167 years and 90 days later, or approximately August 15, 2017.[5] As already explained, under the Policy, any lawsuit must be filed within "3 years following the date proof of loss is required." *See* ACE Policy at 18. Plaintiff accordingly had until August 15, 2020, to file a lawsuit for benefits under the Policy. But he did not file this action until July 2021. *See generally* Compl. The Court finds that the lawsuit is therefore untimely under the Policy.

---

[4] $250,000 maximum benefit amount/ $5,000 per month = 50 months. 50 months/ 12 months a year = 4.167 years.
[5] The Court understands that Plaintiff alleges that he is also entitled to temporary total disability benefits. *See* Compl. at ¶ 32. However, the maximum benefit period for temporary total disability is 52 weeks, even shorter than that for permanent total disability. *See* ACE Policy at 7–8.

8

### B. Equitable Tolling

Plaintiff next argues that the lawsuit is not untimely because Defendant failed to provide notice of the contractual limitations period under the Policy in its February 10, 2021 denial letter. *See* Dkt. No. 20 at 12–13; *see also* Dkt. No. 20-2, Ex. A.  Plaintiff suggests that the contractual limitations period should therefore be tolled until at least February 11, 2021. *See id.* at 13.  The authority Plaintiff cites, however, only permits tolling "in the limited circumstances in which the insurer (or other party against whom the claim has been made) has received timely notice of the loss and thus is able to investigate the claim without suffering prejudice." *See Prudential-LMI Com. Ins. v. Superior Ct.*, 51 Cal. 3d 674 (Cal. 1990), *as modified* (Dec. 13, 1990).  However, the time to file a lawsuit had already run by the time Plaintiff submitted his claim and Defendant sent the denial letter. *See id.* at 692 ("[T]he insurer is entitled to receive prompt notice of a claim . . . .").  Moreover, as Plaintiff's own authority recognizes, "conduct by the insurer after the limitation period has run—such as failing to cite the limitation provision when it denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense—cannot, as a matter of law, amount to a waiver or estoppel." *See Prudential-LMI*, 51 Cal. 3d at 690, n.5.  The Court therefore finds that equitable tolling is not warranted on the basis alleged.

### C. Equitable Estoppel

Plaintiff next argues that Defendant should be estopped from relying on the contractual limitations period because it never provided Plaintiff with notice of the provision. *See* Dkt. No. 20 at 13.  There are no allegations in the complaint, or any other evidence that the Court may consider at this stage, suggesting that Defendant had any obligation to provide Plaintiff with such notice and failed to do so.  The language of the Policy itself clearly states that "[n]o lawsuit or action in equity can be brought to recover on this Policy . . . after 3 years following the date proof of loss is required."  ACE Policy at 18.  And the allegations in the complaint indicate that at least as of June 2012, Plaintiff was aware of the Policy and "inquired [with NMDP] about submitting a disability claim through the ACE Policy due to this unremitting pain." *See* Compl. at ¶ 19.

Lastly, Plaintiff contends that equitable estoppel should apply here because NMDP

9

dissuaded him from submitting a claim to Defendant. *See* Dkt. No. 20 at 14–15. Plaintiff did not sue NMDP in this action. Rather, in his opposition brief, Plaintiff suggests that NMDP was Defendant's agent, and therefore Defendant communicated false information about coverage under the Policy "through NMDP." *See id.* at 14. In his brief, Plaintiff asserts that "NMDP acted as an administrator of the policy benefits under the ACE policy and was, therefore, an agent of ACE." *See id.* at 15. Critically, however, Plaintiff does not allege any facts in the complaint that support the assertion that NMDP was the claim administrator. Nor does Plaintiff allege any other facts to support the conclusion that there was an agency relationship between NMDP and Defendant. There is no allegation before the Court that could support equitable estoppel under these circumstances.

## IV.   CONCLUSION

The Court finds that Plaintiff's claim is untimely on the face of the complaint as currently pled. Accordingly, the Court **GRANTS** the motion to dismiss. At this stage, the Court cannot say that amendment necessarily would be futile. Plaintiff may therefore file an amended complaint within 21 days of the date of this order if he may do so consistent with counsel's Rule 11 obligations. The Court further **CONTINUES** the telephonic case management conference from January 13, 2022, to February 15, 2022 at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated: January 12, 2022

HAYWOOD S. GILLIAM, JR.
United States District Judge